**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JUDY LUXTON, Individually and as Surviving Spouse of TERRENCE J. LUXTON, Deceased, and CHRISTEL RYLEY, Surviving Adult Child of TERRENCE J. LUXTON, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>REBECCA L. LEJA, HENRY LEJA, DELTA TRANZ, L.L.C., a foreign limited liability company, DELTA TRANS, L.L.C., a foreign limited liability company, and TRANSPORT REPAIR SERVICE, INC., d/b/a SHUTTLE TRANSPORT, INC., a foreign limited liability company,<br><br>Defendants. | Case No. 14-CV-416-JED-PJC |

## OPINION AND ORDER

Before the Court are Defendant Delta Trans, L.L.C.'s Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 35) and Defendant Delta Trans, L.L.C.'s Motion to Strike, or, in the Alternative, Motion for Leave to Respond (Docs. 66, 67). Plaintiffs have opposed both motions.

**I.      Background**

Plaintiffs filed this wrongful death action after Terrence Luxton ("Mr. Luxton") was fatally injured while attempting to change a flat tire on the side of Interstate 44 in Ottawa County, Oklahoma on February 7, 2014. Plaintiffs' First Amended Complaint (the "Complaint") alleges that a tire or wheel detached from a passing tractor trailer and struck Mr. Luxton, causing his fatal injuries. The Complaint alleges that the tractor trailer was owned by defendant Delta Tranz, L.L.C. ("Delta Z") or defendant Delta Trans, L.L.C. ("Delta S"), or by both defendants.

(Doc. 27 at 3, ¶¶ 9-10).  Plaintiffs further allege that the driver of the tractor trailer, defendant Rebecca Leja ("RLeja"), and the passenger, defendant Henry Leja ("HLeja"), were agents or employees of either or both Delta Z and Delta S, and at the time of the accident were acting within the course and scope of their employment.  (*Id.* at 5, ¶ 18).  Accordingly, plaintiffs' Complaint alleges that one or both of defendants Delta Z and Delta S are liable to plaintiffs under the doctrine of respondeat superior.  (*Id.*).

Delta S's Motion to Dismiss challenges this Court's jurisdiction, arguing that it has no contacts with Oklahoma sufficient to subject Delta S to personal jurisdiction in this forum.  To that end, the Motion is accompanied by the affidavit of Admir Duric ("Mr. Duric"), the sole owner of Delta S. (Doc. 35-2).  Delta S is a commercial interstate motor carrier company with its principal and sole place of business in Michigan.  (Doc. 35-5).  At the time of the accident, Delta S owned one 2013 Freightliner which was driven by a contract employee.  (Doc. 35-2, ¶ 7).  The tractor trailer that caused the accident was a 2014 Volvo semi-tractor.  (Doc. 35-2, ¶ 4).  Mr. Duric's affidavit shows that the only contact Delta S had with the state of Oklahoma at the time of the accident was that the Freightliner traveled through Oklahoma approximately once a month.  (*Id.*, ¶ 7).

Delta Z is also a Michigan-based commercial interstate motor carrier company.  (Doc. 27, ¶ 4).  Delta Z is solely owned by Edina Duric ("Ms. Duric"), who is Mr. Duric's wife.  The joint status report entered on October 16, 2014, before Delta S was joined as a defendant in the lawsuit, indicates that defendants RLeja and HLeja were agents, servants, or employees of Delta Z and were working within the course and scope of their employment at the time of the incident involving Mr. Luxton.  (Doc. 19 at 3).  Delta Z has not raised a jurisdictional challenge.

The Court granted plaintiffs' request for additional discovery on the jurisdictional issue in light of Delta S's Motion to Dismiss. (Doc. 40). Based on the additional discovery, plaintiffs filed a supplemental response (Doc. 55), to which Delta S filed a supplemental reply (Doc. 64).

## II. Defendant Delta Trans, L.L.C.'s Motion to Strike, or, in the Alternative, Motion for Leave to Respond (Docs. 66, 67)

Delta S's Motion requests the Court to strike portions of plaintiffs' supplemental Post-Discovery Response to Motion to Dismiss for Lack of Personal Jurisdiction by Defendant Delta Trans, L.L.C. (the "Supplemental Response") (Doc. 55), or alternatively, grant defendant leave to respond to portions of plaintiffs' Supplemental Response. (*See* Doc. 66).

Delta S argues that plaintiffs' Supplemental Response violates LCvR 7.2(e), which makes clear that a response to a motion "may not also include a motion or a cross-motion made by the responding party." Specifically, Delta S points to pages 4-7 and 11-13 of the Supplemental Response, which it contends "amount to a Motion to Compel and/or a Motion for Sanctions for Delta S's alleged failure to sufficiently respond to Plaintiffs' discovery requests."[1] (Doc. 66 at 2). Delta S further argues that the Supplemental Response asks the Court to draw negative inferences against Delta S for allegedly providing insufficient discovery responses. (*Id.*). In response, plaintiffs deny that the Supplemental Response requests either a motion to compel or a motion for sanctions, arguing instead that an "explanation was necessary to ensure this Court did not mistake the absence of ordinary documents and facts typically used to conclusively prove" facts in support of establishing personal jurisdiction. (Doc. 68 at 4). Plaintiffs also represent that they intend to file a motion to compel at a later time. (*Id.* at 5).

---

[1] Pages 4-7 provide a procedural background of the case, including the Court's authorization of jurisdiction-specific discovery. Pages 11-13 refer to a section entitled "Missing Facts Due to Alter Ego Delta's Refusal to Comply with Discovery Mandates." (*See* Doc. 55).

3

While plaintiffs' Supplemental Response includes argument and facts that are wholly irrelevant to the Court's determination of the jurisdictional question, the Court declines to read plaintiffs' Supplemental Response as a *de facto* motion to compel or a motion for sanctions. The Court hereby **denies** Defendant Delta Trans, L.L.C.'s Motion to Strike, or, in the Alternative, Motion for Leave to Respond (Docs. 66, 67).

### III.   Defendant Delta Trans, L.L.C.'s Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 35)

Delta S's Motion to Dismiss is premised upon its argument that plaintiff is unable to demonstrate that the Court has either general or specific jurisdiction over defendant. Plaintiffs' Response argues that Delta S's Motion should be denied because Delta S is an alter ego of Delta Z. (Doc. 41 at 1). Plaintiffs' Supplemental Response further argues that based on facts learned during the additional jurisdictional discovery period granted by the Court, they are able to establish a prima facie showing of personal jurisdiction because both defendants were operating a joint venture. (Doc. 55 at 14).

#### A.  Legal Standard

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over Delta S. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id*. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id*. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction

unreasonable.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The court must accept as true "any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* Okla. Stat., tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." *Conoco, Inc. v. Agrico Chem. Co*., 115 P.3d 829, 835 (Okla. 2004) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon*, 205 F.3d at 1247 (quoting *World-Wide Volkswagen*, 444 U.S. at 291)). A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472 (1985)). "When a plaintiff's cause of action does not arise directly from a

defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Id.* at 1247 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984)).

### B. Analysis

Plaintiffs' original Response asserts personal jurisdiction under an alter ego theory, and their Supplemental Response argues that personal jurisdiction exists because Delta S and Delta Z are operating under a joint venture. (Doc. 55 at 4). However, plaintiffs' Supplemental Response states that "it appears now the relationship between Delta [Z] and Delta [S] is likely more appropriately viewed from the lens of a joint venture." [2] (Doc. 55 at 4 n.1). Accordingly, the Court will only address plaintiffs' joint venture argument.

Moreover, it appears that plaintiffs are asserting personal jurisdiction based upon specific jurisdiction, not general jurisdiction. The Court does not find that general jurisdiction exists in this case, as Delta S is not based in Oklahoma and has no other continuous, general or systematic ties to the state of Oklahoma. Thus, the Court only analyzes whether Delta S is subject to specific jurisdiction, which requires: (1) minimum contacts between the Delta S and the forum state, and (2) an analysis of whether exercising personal jurisdiction over Delta S would offend "traditional notions of fair play and substantial justice," or, instead, is "reasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091.

---

[2] Plaintiff acknowledges that when they originally filed their Response, it "appeared that [defendants] were alter egos." (Doc. 55 at 14). The Court notes that plaintiffs "reserve the right to argue [the alter ego] theory based on the facts which are ultimately available at trial." (*Id.*).

### 1. Sufficient minimum contacts

The touchstone of a minimum contacts analysis is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. The "question of '[w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (quoting *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)). A party may establish minimum contacts using agency theory, such as joint venture. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002). "The joint venture theory provides that the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all." *Hill v. Shell Oil Co.*, 149 F. Supp. 2d 416, 418 (N.D. Ill. 2001). A defendant is precluded from challenging personal jurisdiction where it has claimed and held itself out to be part of a joint venture. *Certain Underwriters at Lloyd's, London v. Garmin Int'l Inc.*, 2012 WL 1158849, at *4 (D. Kan. Apr. 6, 2012).

The parties dispute whether Oklahoma law—where the incident occurred, or Michigan law—where Delta S and Delta Z were formed, governs the joint venture analysis. As it is unclear which choice of law is applicable, the Court will apply both. Under Oklahoma law, the three elements for establishing a joint venture are: (1) a joint interest in property; (2) an express or implied agreement to share profits and losses of the venture; and (3) action or conduct showing cooperation in the project. *Price v. Howard*, 236 P.3d 82, 91 (Okla. 2010). Although "[t]he contributions of the respective parties need not be equal or of the same character for the relationship to be a joint venture . . . there must be some contribution of each co-adventurer of

7

something promotive of the enterprise." *Sholer v. State ex rel. Dep't of Pub. Safety*, 149 P.3d 1040, 1047 (Okla. Ct. App. 2006). "Each member of a joint venture acts for himself as principal and as agent for the other members within the general scope of the enterprise." *King v. Modern Music Co.*, 33 P.3d 947, 955 (Okla. Ct. App. 2001).

Plaintiffs have alleged facts, that if true, establish a prima facie case that Delta Z and Delta S are engaged in a joint venture to carry out a common carrier business. Under the first factor, whether there was a joint interest in property, Ms. Duric testified that Mr. Duric is an owner of Delta Z's trucks, which Delta Z uses as part of its regular business. (Doc. 55, Exh. 9 at 76:21-77:24). Moreover, plaintiffs have shown that there was commingling of funds between the two businesses, which supports a joint interest in property. Specifically, Ms. Duric testified that Delta Z's gross earnings were deposited into Delta S's account for a period of time where Delta Z had problems with its bank account. (Doc. 55, Exh. 9 at 89:8-10).[3] While Mr. Duric asserts Delta S operates out of his home and only had a single contract employee at the time of the incident, plaintiffs have provided evidence of a UCC filing that shows Delta S listed its address as Delta Z's address, and that Delta S's balance sheet lists expenses for "building repairs," "rent expense," "office supplies," and "employee benefits." (Doc 55, Exhs. 6, 14). Viewing the facts in a light most favorable to plaintiffs, there are sufficient facts to support a finding that Delta S and Delta Z share an interest in property.

As to the second factor, the facts support the existence of an implied agreement to share profits and losses of the common carrier business. Despite the fact that Mr. Duric, by agreement,

---

[3] There is conflicting testimony regarding whether or not the transfer of Delta Z's earnings into Delta S's account was considered a loan. Construing the evidence in a light most favorable to plaintiffs, the Court determines there was no loan because there was no loan agreement, Delta Z never calculated the total amount of money that was transferred, and Delta S never reimbursed Delta Z for the deposits. (*See* Doc. 55, ¶ 12).

was no longer the co-owner of Delta Z as of November 15, 2013 (Doc. 55, Exh. 5) (filed under seal), the parties' conduct suggests otherwise. The Court is particularly persuaded by the fact that, as discussed above, Delta Z's gross earnings were deposited into Delta S's account, which supports a finding that the businesses shared profits and losses. Specifically, plaintiffs state that because the funds were "never reconciled back" to Delta Z, Delta S "retained all of the profit from [Delta Z's] operations." (Doc. 55 at 17). The Court notes, however, that plaintiffs' showing as to this factor is the weakest.

Lastly, there are a multitude of facts demonstrating that Delta Z and Delta S cooperated in the joint venture. For example, the "Amendment to Operasting (sic) Agreement" (the "Agreement") states that Delta Z would lease equipment to Delta S without charge for a period of one and a half years, after which Mr. Duric would be required to pay Delta Z to lease its equipment. (Doc. 55, Exh. 5). The Agreement further shows that Mr. Duric held a management role which included signing authority for Delta Z and that Ms. Duric held the same for Delta S. (*Id.*). This demonstrates that Mr. Duric and Ms. Duric acted as an agent for one another within the general scope of the common carrier business. *See King*, 33 P.3d at 955. Delta S paid for the repairs of Delta Z's tractor trailers. (Doc. 55, Exh. 15). Delta S's balance sheet also shows that Delta S issued checks dated March 12, 2014 to RLeja and HLeja, the Delta Z employees who are also defendants in this case. (Doc. 55, Exh. 10). Finally, Delta Z's business number routes calls to a cellphone that both Mr. and Ms. Duric share. (Doc. 55, Exh. 9 at 50:17-51:1). Ms. Duric testified that she and Mr. Duric, in their capacities as owners of Delta Z and Delta S, did favors for one another's business, which is consistent with the concept of cooperation.[4] (*See, e.g.*, Doc.

---

[4] The following testimony from Ms. Duric's deposition provides an example of a typical favor:

55, Exh. 9 at 138:11-15). Moreover, Ms. Duric and Mr. Duric each testified that they did not keep track of the time spent in their managerial roles for Delta Z and Delta S, nor are they compensated financially for their roles. (Doc. 55, Exh. 9 at 10:19-23; Doc. 55, Exh. 11 at 87:13-21). In sum, plaintiffs have provided sufficient evidence to establish a prima facie case for a joint venture under Oklahoma law.[5]

Based upon the facts discussed above, which are to be viewed in a light most favorable to plaintiffs, the Court also concludes there is evidence supporting a prima facie case of joint venture under Michigan law. Michigan law requires plaintiffs to establish the following six elements:

"(a) an agreement indicating an intention to undertake a joint venture;

"(b) a joint undertaking of

"(c) a single project for profit;

"(d) a sharing of profits as well as losses;

"(e) contribution of skills or property by the parties;

"(f) community interest and control over the subject matter of the enterprise."

*Kay Inv. Co. v. Brody Realty No. 1, L.L.C.*, 731 N.W.2d 777, 781 (Mich. Ct. App. 2006). To be clear, the facts demonstrate: (1) there was an implied agreement between the owners of Delta S

---

>   Q:   In fact, you told me earlier that [Delta] S gets repairs at Transport Repair Service and [Delta] Z pays for them, and you don't ask for that to be paid back, right? That's just one instance.
>   A:   I get a favor back.

(Doc. 55, Exh. 9 at 138:11-15).

[5] The Court notes that this case is similar to *S.W. Bell Media, Inc. v. Arnold*, 819 P.2d 293 (Okla. Ct. App. 1991), where an Oklahoma appellate court found a material dispute of fact regarding an agency relationship between two companies that used the same logo, had similar names, and had signing authority for one another. Likewise, Delta S and Delta Z have very similar names, and the owner of each business has signing authority for the other business.

10

and Delta Z supporting their intention to undertake a joint venture; (2) the owners of Delta S and Delta Z jointly undertook (3) a single project—a common carrier business—for profit; (4) Delta Z shared its profits with Delta S; (5) Delta S's owner and Delta Z's owner contributed their management skills to both businesses, and Delta Z contributed its earnings and leased its trucks free of charge for a period of time to Delta S; and (6) the owner of Delta S was a manager for Delta Z and vice versa, thus showing the existence of mutual community interest and control over the subject matter of the venture.

While Delta S argues that plaintiffs have only shown that Mr. Duric, and not Delta S, had a relationship with Delta Z, the Court does not find merit to this argument because Mr. Duric is the sole owner of Delta S. Moreover, Delta S's reliance on *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 494 (10th Cir. 2012) is misplaced, as there, the Tenth Circuit found that personal jurisdiction did not extend to a party based on agency theory because the purported agent's actions were "completely unrelated to . . . the joint venture." That is not the case here, as both Mr. Duric and Ms. Duric undertook actions related to and in furtherance of the common carrier business.

Thus, plaintiffs have presented sufficient evidence to meet their burden of establishing a prima facie case of joint venture under both Oklahoma and Michigan law, thereby satisfying the minimum contacts test.

### 2. Traditional notions of fair play and substantial justice

Next, the Court must consider whether its "exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings, Inc.*, 149 F.3d at 1091.

> In assessing whether an exercise of jurisdiction is reasonable, we consider [a] the burden on the defendant, [b] the forum state's

> interest in resolving the dispute, [c] the plaintiff's interest in receiving convenient and effective relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies.

*Id.* at 1095. The Court applies a sliding scale analysis: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *Id.* at 1092.

Delta S has presented no argument that it would be unreasonable for the Court to exercise jurisdiction over it in this case. *See Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (in seeking to defeat jurisdiction under the second prong, a defendant "must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable" (quotations and citations omitted)). Nonetheless, the Court concludes that an exercise of personal jurisdiction over Delta S in the Northern District of Oklahoma is not contrary to the traditional notions of fair play and justice. First, there may be some burden on Delta S to litigate a case in Oklahoma although it is headquartered in Michigan. Second, although none of the parties are residents of Oklahoma, the state retains an interest where "resolution of the dispute requires a general application of the forum state's laws." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *OMI Holdings, Inc.*, 149 F.3d at 1096. There is no evidence that plaintiffs would be able to receive convenient and effective relief in another forum. Fourth, it is clear that Oklahoma is the most efficient place to litigate the dispute, as the wrong occurred in Oklahoma, witnesses who viewed the incident are likely located in Oklahoma, and Oklahoma law will govern the dispute.

There is also no sign that this Court's exercise of jurisdiction would result in piecemeal litigation.  Fifth, the Court can discern no substantive social policy that would be affected by either the exercise or non-exercise of jurisdiction in Oklahoma.  In sum, the five factors do not weigh in Delta S's favor and the Court accordingly concludes that its exercise of personal jurisdiction over Delta S would not offend traditional notions of fair play and justice.

Given the relatively strong showing of reasonableness and a sufficient showing of minimum contacts, both prongs of the federal due process analysis are satisfied and the Court may properly exercise personal jurisdiction over Delta S.  The Court notes that it remains open to the possibility that evidence obtained at later stages of this litigation may show that personal jurisdiction over Delta S is inappropriate.  To that extent, the Court's denial of the Motion to Dismiss is without prejudice.

## IV.  Conclusion

For the reasons discussed, both of Delta S's motions are denied.

**IT IS THEREFORE ORDERED** that Delta S's Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 35) is **denied without prejudice** and Delta S's Defendant Motion to Strike, or, in the Alternative, Motion for Leave to Respond (Docs. 66, 67) is **denied**.

**SO ORDERED** this 19th day of September, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE