IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUDY LUXTON, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 14-cv-416-JED-JFJ |
| v. | ) |
| | ) |
| REBECCA L. LEJA, et al. | ) |
| | ) |
| Defendants. | ) |

# OPINION & ORDER

The Court has for its consideration Plaintiffs' Motion to Join Parties, Add Claims, and to File a Second Amended Complaint (Doc. 161). Responses in opposition to this motion have been filed by all defendants. (Doc. 166, 168).

**I.      Background**

Plaintiffs filed this wrongful death action on July 22, 2014, after Terrence Luxton ("Mr. Luxton") was fatally injured while attempting to change a flat tire on the side of Interstate 44 in Ottowa County, Oklahoma. The original defendants in this action were Rebecca L. Leja ("Ms. Leja"), Henry Leja ("Mr. Leja"), and Delta Tranz, LLC ("TranZ"). (*See* Doc. 2). In January 2015, this Court granted an unopposed motion by Plaintiffs to add Delta Trans, LLC ("TranS"), and Transport Repair Service, Inc., d/b/a Shuttle Transport, Inc.,[1] as defendants. (Doc. 24).

After Plaintiffs filed their First Amended Complaint (Doc. 27), TranS sought to have the claims against it dismissed for lack of personal jurisdiction. (*See* Doc. 35). On September 19, 2016, the Court denied TranS's motion to dismiss, and TranS subsequently filed its Answer (Doc.

---

[1] On April 17, 2018, Plaintiffs stipulated to the dismissal of Transport Repair Services, Inc., d/b/a Shuttle Transport, Inc., from this action. (Doc. 138).

90) to the First Amended Complaint. A scheduling order (Doc. 92) was then issued by the Court, setting the trial for April 16, 2018. The scheduling order has been amended several times since; most recently, the Court extended the discovery cutoff date to January 31, 2019, and reset the trial date for July 15, 2019. (Doc. 189).

In the midst of these schedule changes, as well as various discovery disputes, Plaintiffs filed the motion the Court now takes up for consideration. In this motion, Plaintiffs argue that the owners of Defendants TranS and TranZ, Admir and Edina Duric, have "spirit[ed] away significant assets from [TranS and TranZ] into a Gordian Knot of both operative and shell entities in an attempt to hide those assets and make them appear judgment proof." (Doc. 161 at 3).[2] With over 100 supporting exhibits, Plaintiffs paint a detailed picture of how the Durics and their relatives have allegedly drained TranS and TranZ to the point of insolvency in order to "deprive the Plaintiffs of a fair recovery" and "mock this Court and its authority to fully and properly administer the remedies offered to Plaintiffs by law." (*Id*. at 2).

To reach these transferred assets and prevent further dissipation, Plaintiffs seek to add nineteen new parties as defendants in this case: Admir and Edina Duric; Admir Duric's father, Safet Duric; Admir and Edina Duric's daughter, Lejla Duric (a.k.a. Lejia Duric); Edina Duric's brother, Mujo Adanalic; Edina Duric's sister-in-law, Alma Adanalic; and several companies affiliated with one or more of these family members (Duric Equipment Holding LLC, West Michigan Used Truck Sales LLC, Delta Repair LLC, Durio Equipment Holding LLC, BH Brokerage LLC, Arm Delivery LLC, S&R Trans LLC (a.k.a. S & R Trans LLC); Arko Express LLC, Arko Exchange LLC, ET Brokers LLC, ENA's Trucking LLC; and XZ Logistics & Warehousing LLC). Plaintiffs also request leave to amend their complaint to add a fraudulent

---

[2] The Court adopts the pagination used by the parties.

transfer claim, a conspiracy claim, and a claim that all the defendant companies should be considered alter egos of each other and the defendant companies should be considered indistinct from their owners. (*See* Doc. 161, Exh. 103).

## III. Legal Standards

Fed. R. Civ. P. 15(a) provides that leave to amend a pleading should be freely granted "when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). If the scheduling order deadline for joining parties and adding claims has passed, which is the case here, the party seeking leave to amend its pleading must not only satisfy the Rule 15(a) standard but must also demonstrate good cause for seeking modification under Fed. R. Civ. P. 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

## IV. Analysis

### A. Timeliness

Defendants first argue that Plaintiffs' motion should be denied as untimely. Plaintiffs do not dispute that the applicable deadline to amend their complaint passed on February 5, 2018. However, they argue that good cause to allow amendment exists because new information learned through discovery gave rise to their motion. *See Gorsuch, Ltd.,* 771 F.3d at 1240 ("Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed."). Specifically, Plaintiffs argue that they gained the information to support this motion through "recently produced and long-awaited discovery

from Defendants," "claims made to this Court by the Defendants in recent pleadings," and "conversations with counsel." (Doc. 161 at 17).

Under Oklahoma's Uniform Fraudulent Transfer Act, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." *Okla. Stat.* tit. 24, § 116(A). The Act goes to list several factors to consider in determining "actual intent," including whether "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *Id.* § 116(B)(9). The Court finds it highly relevant to the issue of timeliness that TranS first revealed its insolvency several months after the deadline passed for Plaintiffs to add parties and claims. (Doc. 148 at 9). It stands to reason that this announcement put Plaintiffs on notice of potential new claims, specifically concerning fraudulent transfer. Consequently, the Court is unpersuaded that Plaintiffs' motion should be denied on the basis of untimeliness and undue delay.

### B. Futility

Defendants also argue that the Court should deny Plaintiffs' motion on the basis of futility. "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *E.SPIRE Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (quoting *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997)).

### 1. Joinder of New Defendants

One of several futility-related arguments made by Defendants is that this Court would lack personal jurisdiction over the proposed new defendants. For a court to exercise personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate the existence of facts satisfying both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also* 12 Okla. Stat. § 2004(F).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process," the court "must first assess whether 'the defendant has such minimum contacts with the forum state that [it] should reasonably anticipate being haled into court there.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)). If a defendant has minimum contacts with the forum state, the court then determines "whether the exercise of personal jurisdiction over [that] defendant offends traditional notions of fair play and substantial justice." *Id.*

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *Id.* Specific jurisdiction exists "'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Under what is known as the *Calder* "effects test," purposeful direction

in a tort suit is established by showing that the defendant committed "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

According to the proposed Second Amendment Complaint, the human defendants sought to be joined to this action are all citizens and residents of Michigan. (Doc. 161, Exh. 103 at ¶¶ 5, 7, 8, 11). Similarly, the proposed new company defendants are all organized under the laws of Michigan and have their principal places of business in Michigan. (*Id*. at ¶¶ 6, 9, 10, 12, 13). None of the fraudulent transactions alleged in the motion occurred in Oklahoma, and Plaintiffs themselves are not residents of Oklahoma. Nonetheless, Plaintiffs argue the "effects test" is satisfied here because the proposed new defendants directed their tortious conduct "specifically toward the Northern District of Oklahoma—intending to strip this Court of its authority to dispense justice." (Doc. 161 at 16).

The Court has struggled to find any case law supporting the exercise of personal jurisdiction in this type of scenario. In fact, courts have been somewhat reluctant to exercise personal jurisdiction over non-resident transferees in fraudulent transfer cases even when the creditor *is* a forum resident. In *Mullins v. TestAmerica, Inc.*, the Fifth Circuit stated that it was "skeptical . . . that a non-resident defendant's receipt of assets transferred with an intent to hinder, delay, or defraud a creditor *ipso facto* establishes personal jurisdiction in the state where a complaining creditor resides." 564 F.3d 386, 400 (5th Cir. 2009). As explained by the *Mullins* court, "the 'effects' test in *Calder* does not supplant the need to demonstrate minimum contacts that constitute purposeful availment, that is, conduct by the non-resident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state

6

resident." *Id.*; *see also Allen v. Noah Precision, LLC*, Civil No. 4:14-cv-611, 2016 WL 6476951 (E.D. Tex. Nov. 2, 2016), *Boatright Family, LLC v. Reservation Center, Inc.*, No. CIV-13-192-D, 2015 WL 2345299 (W.D. Okla. May 14, 2015).

The Court also acknowledges that the Supreme Court and Tenth Circuit, in discussing specific jurisdiction over non-resident defendants, have consistently referred to actions directed at <u>residents of the forum</u>. *See Burger King Corp.*, 471 U.S. at 472; *Dudnikov*, 514 F.3d at 1075-76; *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) ("The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's forum-related activities.") (internal quotation marks omitted). Given that Plaintiffs are not residents of Oklahoma, the Court is unable to see how it can exercise personal jurisdiction over the proposed new defendants. For that reason, the Court finds that joinder of these persons and companies would be futile and Plaintiffs' motion for leave to amend their complaint is denied in this regard.

### 2. Fraudulent Transfer Claim

The Court must now separately consider whether Plaintiffs should be granted leave to add their proposed new claims against the existing defendants. The Court notes that the fraudulent transfer claim, as set out in Count VII of Plaintiffs' proposed Second Amended Complaint, appears to be brought against existing defendants TranS and TranZ. (Doc. 161, Exh. 103 at ¶¶ 40-46). Nevertheless, the Court finds that allowing Plaintiffs to add this claim against TranS and TranZ would be futile because the alleged transferees (the proposed new defendants) are necessary parties.

7

The purpose of the Oklahoma's Uniform Fraudulent Transfer Act "is to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of reach of present and future creditors." *Burrows v. Burrows*, 886 P.2d 984, 988 (Okla. 1994). The section of the Act titled "Creditor's remedies" provides the following:

> A. In an action for relief against a transfer or obligation pursuant to the provisions of the Uniform Fraudulent Transfer Act, a creditor, subject to the limitations of Section 9 of this act, may obtain:
>
> > 1. avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; or
> >
> > 2. an attachment or other provisional remedy against the asset transferred or other property of the transferee as provided for by law; or
> >
> > 3. subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> >
> > > a. an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, or
> > >
> > > b. appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or
> > >
> > > c. any other relief the circumstances may require.

*Okla. Stat.* tit. 24, § 119(A).

Although it appears that the Oklahoma Supreme Court has not specifically addressed the issue of necessary parties-defendant in a fraudulent transfer action, the Oklahoma Court of Civil Appeals has stated that "[i]n an action to set aside a fraudulent conveyance or transfer of property, the grantee or transferee is an indispensable party, where he still retains the title to the property." *Fraley Ins. Agency v. Johnston*, 784 P.2d 430, 431 (Okla. Civ. App. 1989) (quoting 37 C.J.S., *Fraudulent Conveyances*, § 345). Other courts across the country have held that the transferee is a necessary party to a fraudulent transfer action "because the action to set aside the allegedly fraudulent transfer necessarily impacts the transferee's interest in the property the transferee

received." *Cendant Corp. v. Shelton*, 473 F. Supp. 2d 307, 313 (D. Conn. 2007); *see also Tanaka v. Nagata*, 868 P.2d 450, 454 (1994) (listing cases). This Court finds that allowing Plaintiffs to bring their fraudulent transfer claim against only the alleged debtors—TranS and TranZ—would raise serious due process concerns for the alleged transferees. For this reason, the Court will not allow Plaintiffs to add this claim to their complaint at this time.

### 3. Civil Conspiracy Claim & Alter Ego / Veil-Piercing Claim

Under Oklahoma law, a civil conspiracy "consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Brock v. Thompson*, 948 P.2d 279, 294 (1997). "Unlike its criminal counterpart, civil conspiracy itself does not create liability." *Id*. "In essence, a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Id*. n.66. As explained above, Plaintiffs will not be allowed to add a fraudulent transfer claim or to join the proposed new defendants, so the Court finds no reason to allow the addition of a civil conspiracy claim tying the proposed new defendants to the alleged fraudulent transfers. Similarly, because the alter ego/veil-piercing claim appears to relate to the proposed fraudulent transfer claim, the Court sees no reason to allow for the addition of that claim.[3]

## V. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Join Parties, Add Claims, and to File a Second Amended Complaint (Doc. 161) is **denied.**

ORDERED this 10th day of January, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs' request for injunctive relief (*see* Doc. 161 at 28-29) also appears inexorably tied to Plaintiffs' proposed fraudulent transfer claim. Without that claim, the Court finds this request to be moot.

9